**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

Thaddeus R. Maciag, Esq.
MACIAG LAW, LLC
475 Wall Street
Princeton, New Jersey 08540
(908) 704-8800
**Attorney for the Debtor-in-Possession**

Order Filed on May 16, 2016
by Clerk
U.S. Bankruptcy Court
District of New Jersey

In re:

  Comforcare for MDE, Inc. ,

        Debtor-in-Possession.

Case No.: 15-24730-CMG

Chapter 11 Reorganization
Judge: Gravelle
Hearing Date: April 5, 2016


# ORDER CONFIRMING CHAPTER 11 PLAN, MODIFYING PLAN, AND CONFIRMING PLAN AS MODIFIED


      The relief set forth on the following pages, numbered two (2) through (3),

is hereby ORDERED.


**DATED: May 16, 2016**

_Christine M. Gravelle_
Honorable Christine M. Gravelle
United States Bankruptcy Judge

"In re Comforcare for MDE, Inc."
Chapter 11 Reorganization
Case No. 12-24730-CMG
Caption of Order:    ORDER CONFIRMING CHAPTER 11 PLAN,
                     MODIFYING PLAN, AND CONFIRMING PLAN AS MODIFIED

Whereas, a proposed First Modified Plan of Reorganization under Chapter 11 of the

Bankruptcy Code filed by the Debtor-in-Possession on February 2, 2016, having been

transmitted to creditors and equity security holders; said Plan is now modified as set forth in this

Order, and is confirmed as herein modified.

It having been determined after hearing on notice that the requirements for confirmation

set forth in 11 U.S.C. § 1129(a) have been satisfied; and that any objections to confirmation have

been withdrawn, settled, or overruled,

IT IS ORDERED:

**(1)**    That the Plan of Reorganization as filed by the within Debtor-in-Possession on February

2, 2016 is confirmed, as further modified by this Order;

**(2)**    That the Plan as herein confirmed is modified at Class 1to reflect the agreement reached

by consent order in settlement and withdrawal of objection to confirmation by Parke

Bank, to wit, that the Debtor's Plan of Reorganization shall be modified to provide:

**(a)**  that Class 1 of said Plan is now amended to read as follows:

**Class 1 -- Secured Claim of Parke Bank.**  The Allowed Claims
of Class 1 shall consist of all Allowed Secured Claims of  Parke
Bank, which holds a lien, secured by a UCC-1 filing on all
tangible and intangible assets of the Debtor. The Claims of Class
1 shall consist of the Secured Claims of Parke Bank of New
Jersey, which is estimated at $499,553.82 as of February 29,
2016.  Parke Bank as the Class 1 Creditor shall be deemed to be
the holder of an Allowed Secured Claim at the value of the
underlying collateral, or $250,0000. Said debt is to be paid

**"In re Comforcare for MDE, Inc."**
**Chapter 11 Reorganization**
**Case No. 12-24730-CMG**
**Caption of Order:    ORDER CONFIRMING CHAPTER 11 PLAN,**
                        **MODIFYING PLAN, AND CONFIRMING PLAN AS MODIFIED**

outside the Plan in 54 monthly installments, amortized over 60 months, at the contracted adjustable rate of interest, i.e., the WSJ Prime Rate + 2.75% interest [thus 6.25% as of 2/26/16 or $4,862.32 per month for 54 months, with a final balloon payment in month 55, to be made on or before October 22, 2020; assuming that the prior payments are timely made said final payment will be approximately $28,614.94, but in any case shall be in the amount of the final balance then due and owing).  Said payments shall begin May 1, 2016 and shall end October 22, 2020). The balance of the Parke Bank Claim, estimated at $249,553.82 (less such sum as may be separately paid by guarantors of said loan prior to the Effective Date), shall be reclassified as a Class 5 General Unsecured Claim. This class is impaired.  Further provided, that this treatment of Class 1 is without prejudice to additional payments being made to Parke Bank by guarantors or co-obligors of said debt, outside the plan .

**(b)**    That Article 5 of the Plan, "DISCHARGE" shall be amended to add a third paragraph, stating as follows:

"Any Discharge of the Debtor upon confirmation will not modify, abrogate or terminate the obligation or mortgage of any guarantor or co-obligor of the debt due and owing to Parke Bank."

**(3)**    A copy of the confirmed Plan, as subject to the above modification, is attached to and made a part of this Order.

#        #        #

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

Thaddeus R. Maciag, Esq.
MACIAG LAW, LLC
475 Wall Street
Princeton, New Jersey  08540
(908)704-8800
Attorney for the Debtor-in-Possession

In re:

   COMFORCARE FOR MDE, INC.,

                    Debtor-in-Possession .

Case No.: **15-24730-CMG**

**Chapter 11 Reorganization**
**Judge: Hon. Christine M. Gravelle**
**Hearing Date:**

# SMALL BUSINESS DEBTOR'S
# COMBINED PLAN OF REORGANIZATION
# AND DISCLOSURE STATEMENT

**PLEASE READ THIS COMBINED PLAN OF REORGANIZATION AND DISCLOSURE STATEMENT CAREFULLY. THIS CONTAINS INFORMATION THAT MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THE PLAN OF REORGANIZATION. THE PLAN PROPONENT BELIEVES THAT THE PLAN OF REORGANIZATION IS IN THE BEST INTEREST OF THE CREDITORS AND THAT THE PLAN IS FAIR AND EQUITABLE.  THE PROPONENT URGES THAT THE VOTER ACCEPT THE PLAN.**

Proponent:   **COMFORCARE FOR MDE, INC.**
**Debtor-in-Possession**

Date:  February 1, 2016                    by:   /s/ Michael J. Durkin
                                        Michael J. Durkin, President

This Combined Plan of Reorganization and Disclosure Statement is presented to you to inform you of the proposed Plan for restructuring the debt of the Debtor, Comforcare for MDE, Inc., and to seek your vote to accept the Plan.

You are encouraged to carefully review the full text of this document, including all Exhibits and attachments, before deciding how to vote on the Plan. To assist you in your review, please note that a list of definitions and a section of frequently asked questions appear at the end of this document.

**IN ADDITION TO CASTING YOUR VOTE TO ACCEPT OR REJECT THE PLAN, YOU MAY OBJECT TO THE ADEQUACY OF THE DISCLOSURES MADE IN THIS DOCUMENT, OR YOU MAY OBJECT TO THE TERMS OF THE PROPOSED PLAN. IF YOU WISH TO OBJECT TO THE ADEQUACY OF THE DISCLOSURES OR TO THE TERMS OF THE PROPOSED PLAN, YOU MUST DO SO BY *[OBJECTION DATE/TIME]*.**

**YOUR BALLOT STATING HOW YOU ARE VOTING ON THE PLAN MUST BE RETURNED BY *[DEADLINE]*. THE BALLOT MUST BE MAILED TO THE FOLLOWING ADDRESS:**

**Maciag Law, LLC**
**Balloting Department**
**475 Wall Street**
**Princeton, NJ 08540**

**A HEARING ON THE CONFIRMATION OF THE PLAN IS SCHEDULED FOR *[HEARING DATE/TIME]* IN COURTROOM No._____ AT *THE UNITED STATES COURTHOUSE, 402 EAST STATE STREET, TRENTON, NJ 08608***

Your rights may be affected by this Combined Plan and Disclosure Statement. You should consider discussing this document with an attorney.

 /s/ Thaddeus R. Maciag
Thaddeus R. Maciag, Esq.

February 1, 2016                      Attorney for Debtor Comforcare for MDE, Inc.

# TABLE OF CONTENTS

**Page**

SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS .................. 5

ARTICLE 1: BACKGROUND OF THE DEBTOR........................................................ 5

ARTICLE 2:  THE PLAN............................................................................................ 8

ARTICLE 3:  FEASIBILITY OF PLAN  ..................................................................... 18

ARTICLE 4:  LIQUIDATION ANALYSIS  ................................................................. 20

ARTICLE 5: DISCHARGE  ........................................................................................ 20

ARTICLE 6: GENERAL PROVISIONS  ..................................................................... 20

ARTICLE 7: DISCHARGE  ........................................................................................ 22

ARTICLE 8: FREQUENTLY ASKED QUESTIONS..................................................... 22

ARTICLE 9: DEFINITIONS........................................................................................ 24

EXHIBITS.................................................................................................................. 27

## SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS

The Plan proposes to pay a total of $212,488.94 to the Priority Tax Claim of the U.S. Internal Revenue Service, $46,328.11 to Priority Tax Claims of the State of New Jersey;  an estimated $18,000.00 to Administrative Claims; $252,471.00 to Secured Creditors; $3,200.00 to Priority Non-Tax Claims; and $20,000 to General Unsecured Creditors, as further described at Article 2 below.

## ARTICLE 1
## BACKGROUND OF THE DEBTOR

### 1.1. Filing of the Debtor's Chapter 11 Case.

On August 5, 2015, the Debtor filed a voluntary petition for relief under the Bankruptcy Code. The Chapter 11 case is pending in the United States Bankruptcy Court in Trenton, New Jersey.

### 1.2. Nature of the Debtor's Business.

The Debtor is a corporation, which operates, as a franchisee, a business which provides home assistance aides, typically to clients who are elderly, disabled, or undergoing medical rehabilitation after an injury or illness. The company operates out of has rented office space located in Ewing Township, New Jersey.

### 1.3. Legal Structure and Ownership.

The Debtor is a New Jersey Corporation, which is 100% owned  by Michael J. Durkin.

### 1.4. Debtor's Assets.

The Debtor's assets include equipment, accounts receivable, and goodwill.

### 1.5. Debtor's Liabilities.

The Debtor's liabilities include a $212,488.94  Priority Tax Claim of the U.S. Internal Revenue Service, $46,328.11 in Priority Tax Claims of the State of New Jersey, a $2,471.00 Secured Claim to the U.S. Internal Revenue Service, and an estimated $485,406.99 Secured Claim by Parke Bank on a U.S. Small Business Administration (SBA) loan, which holds a

secured claim collateralized by all of the Debtor's tangible and intangible assets and cash flow. Priority Unsecured Claims total $3,200.00.  General Unsecured Claims are estimated at $381,317.99, including the unsecured portion of the ParkeBank/SBA claim.

**1.6. Current and Historical Financial Conditions.**

In the last five to six years prior to the filing of this case in August 2015, the national and regional economy slipped deeper into an economic recession. The Debtor filed its Chapter 11 Reorganization Petition on August 5, 2015.  The Debtor has, since that date, made its day-to-day business operations more profitable by reductions in overhead, operating expenses, staffing and payroll, and improved marketing efforts, and improved procedures and financial controls with insurance companies who provide a significant portion of the Debtor's cash flow.  As a result of these efforts, Debtor believes it has excellent prospects for a successful reorganization, consistent with the financial statements appended to this Disclosure Statement

This is a Reorganizing Plan.  In other words, the Proponent seeks to accomplish payments under the Plan by continuing to operate its business.

Attached as Exhibit D is the Debtor's Income Statement for the months of August through December 2015 (this case was started on August 5, 2015).  Attached as Exhibit B are Financial Projections, which are a projected estimate of the Debtor's future operating and financial performance.

**1.7. Events Leading to the Filing of the Bankruptcy Case.**

In the last five to six years prior to the filing of this case in August 2015, the national and regional economy slipped deeper into an economic recession, insurance providers have made payments more difficult, families have of economic necessity sought other care arrangements for their loved ones, and in some cases even unemployment of other family members has resulted in alternate caregiving options in families. Those events adversely affected the Debtor's cash flow. The Debtor nonetheless kept up payments on its operating expenses, taxes and its SBA loan payments to Parke Bank throughout most of that period, but by mid-2015 had slipped several months behind in its tax liabilities and in the monthly installments payments on the SBA loan.

The Debtor, Comforcare for MDE, Inc., filed a Petition for Reorganization under Chapter 11 of the United States Bankruptcy Code on August 5, 2015.

**1.8. Significant Events During the Bankruptcy Case.**

    **(1)**    The Debtor's Petition was filed August 5, 2015.

(2)    An Application for Retention of Debtor's Attorney was filed August 5, 2015.

(3)    Additional Schedules and documents were filed by the Debtor on August 18, 2015.

(4)    The Debtor filed and successfully gained approval of numerous Motions filed on August 6 and 7, 2015, including:

    (a)    an Application for Expediting Consideration of First Day Matters;

    (b)    an Application for Retention of Counsel for the Debtor;

    (c)    a Motion for Entry of an Order Authorizing the Debtor to Maintain Existing Bank Accounts and Business Forms and Cash Management Procedures;

    (d)    a Motion for Entry of an Order Authorizing the Debtor to pre-petition wages, salaries, compensation, employee benefits and reimbursable business expenses up to the limits set forth in bankruptcy code §507(a);

    (e)    a Motion for Entry of an Order Authorizing the Debtor to (I) to pay pre-petition wages, salaries, compensation, employee benefits and reimbursable business expenses up to the limits set forth in bankruptcy code §507(a); and (ii) to pay pre-petition sales, use, payroll and other taxes that are otherwise priority claims under bankruptcy code §507

    (f)    a Motion for Entry of an Order Authorizing the Debtor to Continue Credit Card Facilities;

    (g)    a Motion for Entry of an Order Authorizing the Debtor to be Permitted to Pay Essential Amounts Due on Insurance Policies;

    (h)    a Motion for an Entry of an Order Authorizing the Debtor's Interim Use of Cash Collateral;

    (I)    a Motion for Entry of an Order to Assume to Extend Time to Assume or Reject Debtor's Lease of Non-residential Real Property;

(5)    Debtor appeared, through counsel, at hearings before Hon. Christine Gravelle, United States Bankruptcy Judge, on August 11, 2015; August

18, 2015; September 22, 2015; October 27, 2015; November 3, 2015; December 22, 2015; and February 16, 2016.

**(6)**     A Meeting of Creditors was conducted by the Office of the United States Trustee at the United States Courthouse in Trenton, New Jersey on September 17, 2015.

**(7)**     The Debtor engaged in successful negotiations for, and entry of a Second Interim Cash Collateral with secured creditor Parke Bank on October 23, 2015;

**(8)**     The Debtor engaged in successful negotiations for, and entry of a Third Interim Cash Collateral with secured creditor Parke Bank on December 21, 2015;

**(9)**     Debtor has cooperated with the Office of the United States Trustee, including attending an Initial Debtor Interview with staff of the Office of the Untied States Trustee; appearing at a Meeting of Creditors conducted by the Office of the United States Trustee; and by filing Operating Reports with the Court and the Office of the United States Trustee.

Other than these Reorganization proceedings in United States Bankruptcy Court, the Debtor is not currently involved in other active litigation matters.

**1.9     Projected Recovery of Avoidable Transfers:**   At this time, there are no material sums estimated to be realized from the recovery of fraudulent and preferential transfers.

## ARTICLE 2

### THE PLAN

The Debtor's Plan must describe how its Creditors will be paid. Certain Claims are entitled to specific treatment under the Bankruptcy Code and are not placed in a class for purpose of payment. For example, Administrative Expenses and Priority Tax Claims are not classified.

As required by the Code, the Plan places Claims and Equity Interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of

Claims or Equity Interests is impaired or unimpaired. A Claim or Equity Interest can be impaired if the Plan alters the legal, equitable or contractual rights to which the Claimants are otherwise entitled. If the Plan is confirmed, each Creditor's recovery is limited to the amount provided in the Plan.

Only Creditors in classes that are impaired may vote on whether to accept or reject the Plan, and only Creditors holding Allowed Claims may vote. A class accepts the Plan when more than one-half (½) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan. Also, a class of Equity Interest holders accepts the Plan when at least two-thirds (2/3) in amount of the allowed Equity Interest holders that actually vote, vote in favor of the Plan. A class that is not impaired is deemed to accept the Plan.

**2.1**. **Unclassified Claims.**

Certain types of Claims are automatically entitled to specific treatment under the Code. For example, Administrative Expenses and Priority Tax Claims are not classified. They are not considered impaired, and holders of such Claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan does not place the following Claims in any class:

**A. Administrative Expenses**

The Debtor must pay all Administrative Expenses in full. If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, "allow" the Administrative Expense. Any Administrative Expense that is undisputed and is due and owing on the Confirmation Date must be paid on the Effective Date of the Plan, or upon such other terms as agreed upon by the Debtor and the Administrative Claimant. If the Administrative Expense is disputed, payment will be made after the Administrative Expense is allowed by the Bankruptcy Court.

Administrative expenses are claims for costs or expenses of administering the Debtor's Chapter 11 case which are allowed under Code Section 503(b). Fees payable to the Clerk of the Bankruptcy Court and the Office of the United States Trustee were also incurred during the Chapter 11 Case.

The Code requires that all administrative expenses be paid on the Effective Date of the Plan , unless a particular claimant agrees to a different treatment .

Court Approval of Professional Compensation and Expenses is Required:

The Court must approve all professional compensation and expenses. Each professional person requesting compensation in the case pursuant to Sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code shall file an application for allowance of final compensation and reimbursement of expenses not later than ninety (90) days after the Confirmation Date. Nothing herein shall prohibit each professional person from requesting interim compensation during the course of this case pending Confirmation of this Plan. No motion or application is required to fix fees payable to the Clerk's Office or the Office of the United States Trustee, as those fees are determined by statute.

There are several types of Administrative Expenses, including the following:

1.  If the Debtor trades in the ordinary course of business following its filing of the Chapter 11 Case, Creditors are entitled to be paid in full for the goods or services provided. This ordinary trade debt incurred by the Debtor after the Petition Date will be paid on an ongoing basis in accordance with the ordinary business practices and terms between the Debtor and its trade Creditors.  In this case, the Debtor's post-petition trade debts are being paid on a C.O.D. basis, and are therefore current.

2.  If the Debtor received goods it has purchased in the ordinary course of business within 20 days before the Petition Date, the value of the goods received is an Administrative Expense. In this case, the debtor has no administrative expenses of this kind.

3.  Administrative Expenses also include any post-petition fees and expenses allowed to professionals, including attorneys and accountants employed upon Bankruptcy Court authority to render services to the Debtor during the course of the Chapter 11 cases. These fees and expenses must be noticed to Creditors and approved by the Bankruptcy Court prior to payment.

The following lists the Debtor's estimated Administrative Expenses, and their proposed treatment under the Plan:

**Debtor's Attorney:** Maciag Law, LLC, estimated at $19,000 net of previous retainers and payments, to be paid at $19,000 on the Effective Date (according to Bankruptcy Court order if such fees have not been approved by the Bankruptcy Court on the Effective Date, or paid within three days of such approval if that occurs after the Effective Date) and, if same exceed $19,000, then  $250 per week thereafter until paid in full.

Page 10 of  27

**United States Trustee Fees** : will be paid in full on the Effective Date. All fees required to be paid by 28 U.S.C. § 1930(a)(6) ("United States Trustee Fees") will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Bankruptcy Code. Any United States Trustee Fees owed on or before the Effective Date of this Plan will be paid on the Effective Date

## B. Priority Tax Claims.

Priority Tax Claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

Each holder of a Priority Tax Claim will be paid as set forth below:

**(a) Priority Tax Claim #1 - United States Internal Revenue Service:** The Allowed Priority Tax Claim of the U.S. Internal Revenue Service shall be allowed at $212,488.94, to be paid over 120 months at 4.0% interest, in 120 equal monthly installments of $2,151.36 each, beginning the 1st day of the third month next following the Effective Date of the Plan (Month 1) and ending 119 months later (Month 120). This claim is impaired.

**(b) Priority Tax Claim #2 - New Jersey Division of Taxation:** The Allowed Priority Tax Claim of the N.J. Division of Taxation shall be allowed at $22,219.67, to be paid over 120 months at 4.0% interest, in 120 equal monthly installments of $224.96 each, beginning the 1st day of the third month next following the Effective Date of the Plan (Month 1) and ending 119 months later (Month 120). This class is impaired.

**(c) Priority Tax Claim #3 - New Jersey Department of Labor, Employer Accounts::** The Allowed Priority Tax Claim of the N.J. Department, Employer Accounts shall be allowed at $24,108.44, to be paid over 120 months at 4.0% interest, in 120 equal monthly installments of $244.08 each, beginning the 1st day

of the third month next following the Effective Date of the Plan
(Month 1) and ending 119 months later (Month 120).  This class
is impaired.

**2.2 Classes of Claims and Equity Interests.**

The following are the classes set forth in the Plan, and the proposed treatment that they
will receive under the Plan:

**A. Classes of Secured Claims**

Allowed Secured Claims are Claims secured by property of the Debtor's bankruptcy
estate (or that are subject to setoff) to the extent allowed as secured Claims under §506 of the
Code. If the value of the collateral or setoffs securing the Creditor's Claim is less than the amount
of the Creditor's Allowed Claim, the deficiency will be classified as a general unsecured Claim.

The following lists all classes containing the Debtor's secured pre-petition Claims and
their proposed treatment under the Plan:

> **Class 1 -- Secured Claim of Parke Bank.**  The Allowed Claims
> of Class 1 shall consist of all Allowed Secured Claims of  Parke
> Bank, which holds a lien, secured by a UCC-1 filing on all
> tangible and intangible assets of the Debtor. The Claims of Class
> 1 shall consist of the Secured Claims of Parke Bank of New
> Jersey, which is estimated at $485,406.99 as of January 31, 2016.
> Parke Bank as the Class 1 Creditor shall be deemed to be the
> holder of an Allowed Secured Claim at the value of the underlying
> collateral, or $250,0000. Said debt is to be paid outside the Plan
> in 60 monthly installments (5 years)  at 4.0% interest, or
> $4,604.13 per month . The payments shall begin the 1st day of the
> third month next following the Effective Date of the Plan (Month
> 1) and shall end 25 months later (Month 36) The balance of the
> Parke Bank Claim, estimated at $235,406.99 (less such sum as
> may be separately paid by guarantors of said loan prior to the
> Effective Date), shall be reclassified as a Class 5 General
> Unsecured Claim. This class is impaired.

**Class 2 -- Secured Claim of U.S. Internal Revenue Service.** The
Allowed Claims of Class 1 shall consist of all Allowed Secured
Claims of the U.S. Internal Revenue Service, which holds a
secured lien against the assets of the Debtor. The Claims of Class
1 shall consist of the Secured Claims of the U.S. Internal Revenue
Service, which will be allowed at $2,471.00. This Class 2
Creditor shall be deemed to be the holder of an Allowed Secured
Claim at the value of the underlying collateral, or $2,471.00. Said
debt is to be paid in 36 monthly installments (5 years) at 4.0%
interest, or $72.95 per month . The payments shall begin the 1st
day of the third month next following the Effective Date of the
Plan (Month 1) and shall end 35 months later (Month 36). This
class is impaired.

### B. Classes of Priority Unsecured Claims.

Certain priority Claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are
required to be placed in classes. The Code requires that each holder of such a Claim receive cash
on the Effective Date of the Plan equal to the allowed amount of such Claim. However, a class
of holders of such Claims may vote to accept different treatment.

The following lists all classes containing Claims under §§ 507(a)(1), (4), (5), (6), and
(a)(7) of the Code and their proposed treatment under the Plan:

**Class 3 -- Priority Unsecured Claim of the Township of Ewing**
The Allowed Claims of Class 3 shall consist of all Allowed
Secured Claims of the Township of Ewing, which holds a priority
unsecured claim in the amount of $200.00. The Claims of Class 3
shall consist of the Allowed Claims of said creditor, which will be
allowed at $200.00. Said debt is to be paid in 6 equal monthly
installments at 4.0% interest, or $33.72 per month . The payments
shall begin the 1st day of the third month next following the
Effective Date of the Plan (Month 1) and shall end 5 months later
(Month 6). This class is impaired.

**Class 4 -- Priority Unsecured Claim of the N.J. Division of**

**Consumer Affairs.** The Allowed Claims of Class 3 shall consist of all Allowed Secured Claims of the N.J. Division of Consumer Affairs, which holds a priority unsecured claim in the amount of $3,000.00. The Claims of Class 4 shall consist of the Allowed Claims of said creditor, which will be allowed at $3,000.00. Said debt is to be paid in 60 equal monthly installments at 4.0% interest, or $55.25 per month. The payments shall begin the 1st day of the third month next following the Effective Date of the Plan (Month 1) and shall end 59 months later (Month 60). This class is impaired.

## C. Class of General Unsecured Claims

General unsecured Claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code. The following chart identifies the Plan's proposed treatment of Class 2, which contains general unsecured Claims against the Debtor:

**Class 5:  Class of General Unsecured Claims** . This Class will be paid a lump-sum of $20,000.00, to be paid over 60 months at 3.0% interest, being $355.96 per month for 60 months These payments shall begin the 1st day of the third month next following the Effective Date of the Plan (Month 1) and shall end 60 months later (Month 60). Class 3 allowed claims, including secured claims of no value, are estimated at approximately $381,317.99, so this sum will pay said claims at a rate of approximately 5.25% of allowed claims. This class is impaired **.**

## D. Class of Equity Interest Holders.

Equity Interest holders are parties who hold an ownership interest ( *i.e.*, equity interest) in the Debtor. In a corporation, entities holding preferred or common stock are Equity Interest holders. In a partnership, Equity Interest holders include both general and limited partners. In a limited liability company ("LLC"), the Equity Interest holders are the members. Finally, with respect to an individual who is a debtor, the Debtor is the Equity Interest holder. The following sets forth the Plan's proposed treatment of the class of Equity Interest Holders:

**Class 6: Class of Equity Interest Holders.**   The Class of Equity

Interest Holders includes Michael J. Durkin, the 100% shareholder
of the debtor. The Equity Interest Holders shall retain his interest
in the Debtor, provided that he brings New Value to the Debtor,
by his investing $32,000.00 of new capital into the Debtor after
the Petition Date and on or before the Confirmation Date, to be
applied to payment of the administrative expenses as due on or
before the Effective Date, or upon order of allowance by the
Court.

**2.3**. **Estimated Number and Amount of Claims Objections.**

The Debtor may object to the amount or validity of any Claim within 90 days of the
Confirmation Date by filing an objection with the Bankruptcy Court and serving a copy of the
objection on the holder of the Claim. The Claim objected to will be treated as a Disputed Claim
under the Plan. If and when a Disputed Claim is finally resolved by the allowance of the Claim
in whole or in part, the Debtor will pay the Allowed Claim in accordance with the Plan.

As fo the filing of this Combined Disclosure Statement and Plan, the Debtor does not
presently anticipate any Claims Objections.

**2.4. Treatment of Executory Contracts and Unexpired Leases.**

Executory Contracts are contracts where significant performance of the contract remains
for both the Debtor and another party to the contract. The Debtor has the right to reject, assume
(i.e. accept), or assume and assign these types of contracts to another party, subject to the
Bankruptcy Court's approval. The paragraphs below explain the Debtor's intentions regarding
its Executory Contracts (which includes its unexpired leases) and the impact such intentions
would have on the other parties to the contracts.

**Assumption of Executory Contracts:**  The Executory Contracts shown on Exhibit E shall
be assumed by the Debtor. Assumption means that the Debtor has elected to continue to perform
the obligations under such contracts and unexpired leases, and to cure defaults of the type that
must be cured under the Bankruptcy Code, if any.  If applicable, the Debtor must list how the
Debtor will cure and compensate the other party to such contract or lease for any such defaults.

If you object to the assumption of your unexpired lease or executory contract, the
proposed cure of any defaults, or the adequacy of assurance of future performance, you must file

and serve your objection to the assumption within the deadline for objecting to the confirmation of the Plan, unless the Bankruptcy Court has set an earlier time.

**Rejection of Executory Contracts and Unexpired Leases** . The Executory Contracts shown on Exhibit F [– none –] shall be rejected by the Debtor. Further, the Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly shown on Exhibit E as assumed, or not assumed before the date of the order confirming the Plan.

Rejection means that the Debtor has elected not to continue to perform the obligations under such contracts or leases. If the Debtor has elected to reject a contract or lease, the other party to the contract or lease will be treated as an unsecured Creditor holding a Claim that arose before the bankruptcy was filed.

**The Deadline for Filing a Proof of Claim Based on a Claim Arising from the Rejection of an Executory Contract shall be March 16, 2016** . Any Claim based on the rejection of an Executory Contract will be barred if the proof of claim is not timely filed, unless the Bankruptcy Court orders otherwise.

## 2.5. Means for Implementation of the Plan.

### 1. Funding for the Plan

The Plan will be funded by the following: revenues from continuing business operations of the Debtor, and from a capital contribution of new value from the Debtor sufficient in amount to pay off the sums to be paid to the Administrative Claimants.

### 2. Post-confirmation Management .

The post-confirmation operations of the of the Debtor will continue to be managed by the Debtor's principal and president, Michael J. Durkin, who is the sole member of the Board of Directors. Each member of the Board of Directors shall serve in accordance with applicable non-bankruptcy law and the Debtor's certificate or articles of incorporation and bylaws, as each of the same may be amended from time to time.

## D. Other Provisions of the Plan:

### 1. Executory Contracts and Unexpired Leases: The Plan provides that all Executory Contracts and Unexpired Leases, except for those specifically assumed by the Debtor in writing

or previously assumed by Court Order shall be deemed rejected. All proofs of claim with respect to claims arising from said rejection must be filed with the Bankruptcy Court within the earlier of (I) the date set forth for filing claims in any order of the Bankruptcy Court approving such rejection or (ii) thirty (30) days after the Confirmation Date. Any such claims, proofs of which are not filed timely, will be barred forever from assertion.

**2. Property of the Debtor on Confirmation:**  On Confirmation of the Plan, all property of the Debtor, tangible and intangible, including, without limitation, licenses, furniture, fixtures and equipment, will revert, free and clear of all Claims and Equitable Interests except as provided in the Plan, to the Debtor. The Debtor expects to have sufficient cash on hand to make the payments required on the Effective Date.

**3.  United States Trustee Fees:**  As provided in Paragraph 2.1 of this Combined Plan and Disclosure Statement, all United States Trustee Fees accrued prior to the Effective Date shall be paid in full, on or before the Effective Date, by the Debtor or any successor to the Debtor. All United States Trustee Fees which accrue post-Effective Date shall be paid in full on a timely basis by the Debtor or any successor to the Debtor prior to the Debtor's case being closed, converted or dismissed.

## 2.6. Disbursing Agent.

The Debtor will serve as its own disbursing agent for the purpose of making all distributions provided for under the Plan. The Debtor reserves the right to pay monthly installments on a quarterly basis, and reserves the right to pre-pay any financial obligation set forth in the Plan, without penalty for pre-payment. Distributions to Creditors provided for in this Plan will be made by Michael J. Durkin, as President of the Debtor, who shall serve as Disbursing Agent under the Plan.

## 2.7. Post-Confirmation Management.

The post-confirmation operations of the of the Debtor will continue to be managed by the Debtor's principal and president, Michael J. Durkin, who is the sole member of the Board of Directors.

## 2.8 Tax Consequences of the Plan.

*Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.*

The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers to possible tax issues this Plan may present to the Debtor. The Proponent CANNOT and DOES NOT represent that the tax consequences contained below are the only tax consequences of the Plan because the Tax Code embodies many complicated rules which make it difficult to state completely and accurately all the tax implications of any action.

The following are the tax consequences that the Plan will have on the Debtor's tax liability:  At this time there are no extraordinary tax consequences anticipated to result from the Plan, other than in the ordinary course of business for the Debtor, and other than the payment of the Secured and Priority Unsecured state and federal tax claims as set forth above

**2.9. Risk Factors/Mitigating Factors.**

The following discussion is intended to be a non-exclusive summary of certain risks attendant upon the consummation of the Plan. You are encouraged to supplement this summary with your own analysis and evaluation of the Plan and Disclosure Statement, in their entirety, and in consultation with your own advisors.

There can be no guarantee that the Debtor will generate sufficient income from its business to make all payments set forth in the Plan.  However, based on the Financial Statements set forth at the Exhibits to this Disclosure Statement, the Debtor as Plan Proponent believes that the Plan is viable and will meet all requirements of confirmation.  If there is a downturn in the economy, the projections may be difficult to achieve.  On the other hand, if there is an upturn in the economy, the projections may be easier to achieve.

## ARTICLE 3

## FEASIBILITY OF PLAN

The Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

**3.1. Ability to Initially Fund Plan** .

The Plan Proponent believes that the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the Claims and expenses that are entitled to be paid on that date. Tables showing the amount of cash on hand on the Effective Date of the Plan, and the sources of that cash, are attached hereto.

**3.2. Ability to Make Future Plan Payments And Operate Without Further Reorganization** .

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments.

The Plan Proponent has provided projected financial information. Those projections are listed in Exhibit B.

A requirement for confirmation involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan. There are at least two important aspects of a feasibility analysis:

The first aspect considers whether the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses that are entitled to be paid on such date. The Plan Proponent maintains that this aspect of feasibility is satisfied as illustrated by the Exhibits attached as Exhibits A, B, C, D, G and H to this Disclosure Statement, showing a balance sheet, profit & loss statements, liquidation analysis, and financial projections for the Debtor's business.

The second aspect considers whether the Proponent will have enough cash over the life of the Plan to make the required Plan payments. The Proponent believes that this second aspect of the feasibility requirement is met for the following reasons: the financial statements appended as Exhibits A, B, C, D, G and H to this Disclosure Statement show that the Debtor will generate sufficient cash from the operations of its small business.

The Plan Proponent contends that the Debtor's financial projections are feasible in light of the financial records maintained by the Debtor prior to and during the pendency of the bankruptcy case, and as set forth in the financial statements included at Exhibits A, B, C, D, G and H hereto. Furthermore, as discussed above in this Disclosure Statement, the Debtor has implemented procedures to reduce expenditures and increase revenues.

The Plan Proponent, on the basis of the foregoing and the annexed financial exhibits including the Financial Projections (Exhibit B), believes that the Plan is feasible.

**You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.**

# ARTICLE 4

## LIQUIDATION ANALYSIS

To confirm the Plan, the Bankruptcy Court must find that all Creditors and Equity Interest holders who do not accept the Plan will receive at least as much under the Plan as such Claimants and Equity Interest holders would receive in a Chapter 7 liquidation. A Liquidation Analysis is attached hereto as Exhibit H.

# ARTICLE 5

## DISCHARGE

**Discharge.** On the Confirmation Date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in § 1141(d)(1)(A) of the Code, which provides that "the confirmation of a plan (A) discharges the debtor from any debt that arose before the date of such confirmation, and any debt of a kind specified in section 502 (g), 502 (h), or 502 (I) of this title, whether or not: (I) a proof of the claim based on such debt is filed or deemed filed under section 501 of this title; (ii) such claim is allowed under section 502 of this title; or (iii) the holder of such claim has accepted the plan."

The Debtor will not be discharged of any debt  of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure; or of a kind specified in § 1141(d)(6)(B).

# ARTICLE 6

## GENERAL PROVISIONS

**6.1. Title to Assets.**

Except as otherwise provided in the Plan or in the order confirming the Plan, (I) confirmation of the Plan vests all of the property of the estate in the Debtor, and (ii) after confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Equity Interests of Creditors, equity security holders, and of general partners in the Debtor.

**6.2. Binding Effect.**

If the Plan is confirmed, the provisions of the Plan will bind the Debtor and all Creditors, whether or not they accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

### 6.3. Severability.

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

### 6.4. Retention of Jurisdiction by the Bankruptcy Court.

The Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters: (I) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan; (ii) to rule on any modification of the Plan proposed under section 1127; (iii) to hear and allow all applications for compensation to professionals and other Administrative Expenses; (iv) to resolve all issues regarding Claims objections, and issues arising from the assumption/rejection of executory contracts or unexpired leases, and (v) to adjudicate any cause of action which may exist in favor of the Debtor, including preference and fraudulent transfer causes of action.

### 6.5. Captions.

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

### 6.6. Modification of Plan.

The Plan Proponent may modify the Plan at any time before confirmation of the Plan. However, the Bankruptcy Court may require a new disclosure statement and/or re-voting on the Plan.

### 6.7. Final Decree.

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Bankruptcy Court shall designate in the Plan Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

# ARTICLE 7

## ATTACHMENTS

The following documents accompany the Combined Plan and Disclosure Statement:

EXHIBIT A:  Debtor's Balance Sheet, including Assets at Fair Market Value, and Liabilities

EXHIBIT B: Financial Forecast for the Debtor [Projections]

EXHIBIT C: Debtor's most recent financial statements issued before this case started

EXHIBIT D: Income Statements for the Debtor since the first month of this bankruptcy case

EXHIBIT E:  Executory Contracts and Unexpired Leases to be Assumed

EXHIBIT F:  Executory Contracts and Unexpired Leases to be Rejected

EXHIBIT G:   Statement of the cash projected to be on hand as of the Effective Date, and the sources of that cash

EXHIBIT H: Liquidation Analysis

# ARTICLE 8

## FREQUENTLY ASKED QUESTIONS

**What is the Debtor Attempting to Do in Chapter 11?**  Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Under Chapter 11, a debtor attempts to restructure the claims held against it. Formulation and confirmation of a plan of reorganization is the primary goal of Chapter 11. When reorganization is not feasible, however, a debtor may propose a liquidating plan under Chapter 11. The plan is the legal document which sets forth the manner and the means by which holders of claims against a debtor will be treated.

**If the Plan of Reorganization Is the Document That Governs How a Claim Will Be Treated, Why Am I Receiving This Combined Plan and Disclosure Statement?**   In order to confirm a plan of reorganization [or liquidation], the Bankruptcy Code requires that a debtor solicit acceptances of a proposed plan, which it is doing with this Combined Plan and Disclosure Statement. If the creditors are satisfied with the information provided in the Plan and the terms of the Plan as proposed, and have voted for the Plan and returned the requisite number of ballots to counsel for the Debtor, the Bankruptcy Court may confirm the Plan as proposed by the Debtor.

**How Do I Determine Which Class I Am In?**  To determine the class of your claim or interest, you must first determine whether your claim is secured or unsecured. Your claim is secured if you have a validly perfected security interest in collateral owned by the Debtor. If you

Page 22 of  27

do not have any collateral, your claim is unsecured.

The Table of Contents will direct you to the treatment provided to the class in which you are grouped. The pertinent section of the Plan dealing with that class will explain, among other things, who is in that class, what is the size of the class, what you will receive if the Plan is confirmed, and when you will receive what the Plan has provided for you if the Plan is confirmed.

Article 2 of this Combined Disclosure Statement and Plan lists all classes of claimants and their types of claims.

**Why Is Confirmation of a Plan of Reorganization Important?** Confirmation of the Plan is necessary because if the Plan is confirmed, the Debtor and all of its creditors are bound by the terms of the Plan. If the Plan is not confirmed, the Debtor may not pay creditors as proposed in the Plan while the Debtor remains in bankruptcy.

**What Is Necessary to Confirm a Plan of Reorganization?** Confirmation of the Plan requires, among other things, the vote in favor of the Plan of two-thirds in total dollar amount and a majority in number of claims actually voting in each voting class. If the vote is insufficient, the Bankruptcy Court can still confirm the Plan, but only if certain additional elements regarding the ultimate fairness of the Plan to the creditors are shown.

**Am I Entitled to Vote on the Plan?** Any creditor of the Debtor whose claim is IMPAIRED under the Plan is entitled to vote, if either (I) the creditor's claim has been scheduled by the Debtor and such claim is not scheduled as disputed, contingent, or unliquidated, or (ii) the creditor has filed a proof of claim on or before the last date set by the Bankruptcy Court for such filings. Any claim to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allows the creditor to vote upon the creditor's motion. Such motion must be heard and determined by the Bankruptcy Court prior to the date established by the Bankruptcy Court to confirm the Plan.

**How Do I Determine Whether I Am in an Impaired Class?** The treatment of creditors section of the Plan identifies the classes of creditors whose claims are impaired. If your claim is impaired, your vote will be considered by the Bankruptcy Court.

**When Is the Deadline by Which I Need to Return My Ballot?** The Plan is being distributed to all claim holders for their review, consideration and approval. The deadline by which ballots must be returned is _____. 2016. Ballots should be mailed to the following address:                    MACIAG LAW, LLC

BALLOTING DEPARTMENT
475 Wall Street
Princeton, NJ 08540

**How Do I Determine When and How Much I Will Be Paid?**   In Article 2, the Debtor has provided both written and financial summaries of what it anticipates each class of creditors will receive under the Plan.

## ARTICLE 9

## DEFINITIONS

**9.1.**  The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan. The definitions that follow that are found in the Code are for convenience of reference only, and are superseded by the definitions found in the Code.

**9.2. Administrative Claimant** : Any person entitled to payment of an Administration Expense.

**9.3. Administrative Convenience Class:**  A class consisting of every unsecured claim that is less than or reduced to an amount that the Bankruptcy Court approves as reasonable and necessary for administrative convenience.

**9.4. Administrative Expense** : Any cost or expense of administration of the Chapter 11 case entitled to priority under Section 507(a)(2) of the Code and allowed under Section 503(b) of the Code, including without limitation, any actual and necessary expenses of preserving the Debtor's estate, any actual and necessary expenses incurred following the filing of the bankruptcy petition by the Debtor-in-Possession, allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, and any fees or charges assessed against any of the Debtor's estates under Chapter 123, Title 28, United States Code.

**9.5 Administrative Tax Claim** : Any tax incurred pursuant to Section 503(b)(1)(B) of the Code.

**9.6. Allowed Claim** : Any claim against the Debtor pursuant to Section 502 of the Code to the extent that: (a) a Proof of Claim was either timely filed or was filed late with leave of the Bankruptcy Court or without objection by the Debtor, and (b) as to which either (I) a party in interest, including the Debtor, does not timely file an objection, or (ii) is allowed by a Final

Order.

**9.7. Allowed Priority Tax Claim** : A Priority Tax Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**9.8. Allowed Secured Claim** : Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code

**9.9. Allowed Unsecured Claim** : An Unsecured Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**9.10. Bankruptcy Code or Code** : The Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code.

**9.11. Bankruptcy Court** : The United States Bankruptcy Court for the District of New Jersey.

**9.12. Bankruptcy Rules** : The Federal Rules of Bankruptcy Procedure.

**9.13. Cash** : Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

**9.14. Chapter 11 Case** : This case under Chapter 11 of the Bankruptcy Code in which Comforcare for MDE, Inc.  is the Debtor-in-Possession.

**9.15 Claim** : Any "right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5).

**9.16. Class** : A category of holders of claims or interests which are substantially similar to the other claims or interests in such class.

**9.17. Committee** : Any Committee of Creditors appointed by the United States Trustee in the chapter 11 case pursuant to Section 1102 of the Bankruptcy Code.

**9.18. Confirmation**: The entry by the Bankruptcy Court of an order confirming this Combined Plan and Disclosure Statement.

**9.19. Confirmation Date**: The Date upon which the Bankruptcy Court shall enter the Confirmation Order; provided however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

**9.20. Confirmation Hearing**: The hearing to be held on _____, 2016 to consider confirmation of the Plan.

**9.21. Confirmation Order**: An order of the Bankruptcy Court or any amendment thereto confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

**9.22. Creditor**: Any person who has a Claim against the Debtor that arose on or before the Petition Date.

**9.23. Debtor** and **Debtor-in-Possession**: [Debtor], the debtor-in-possession in this Chapter 11 Case.

**9.24. Disputed Claim:** Any claim against the Debtor pursuant to Section 502 of the Code that the Debtor has in any way objected to, challenged or otherwise disputed.

**9.25. Distributions**: The property required by the Plan to be distributed to the holders of Allowed Claims.

**9.26. Effective Date**:   The Effective Date of the proposed Original Plan is the date on which all conditions to the order of confirmation have been met, and the order of confirmation becomes final and non-appealable.

**9.27. Equity Interest**: An ownership interest in the Debtor.

**9.28. Executory Contracts**: All unexpired leases and executory contracts as described in Section 365 of the Bankruptcy Code.

**9.29. Final Order**: An order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

**9.30. IRC**: The Internal Revenue Code

**9.31. Petition Date**: August 5, 2015, the date the Chapter 11 petition for relief was filed

in this case.

**9.32. Plan**: This Combined Plan and Disclosure Statement, either in its present form or as it may be altered, amended, or modified from time to time.

**9.33. Plan Proponent**: The individual or entity that has filed this Combined Plan and Disclosure Statement.

**9.34. Priority Tax Claim**: Any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

**9.35. Reorganized Debtor**: The Debtor after the Effective Date.

**9.36. Schedules**: Schedules and Statement of Financial Affairs, as amended, filed by the Debtor with the Bankruptcy Court listing liabilities and assets.

**9.37. Secured Creditor**: Any creditor that holds a Claim that is secured by property of the Debtor.

**9.38. Unsecured Creditor**: Any Creditor that holds a Claim in the Chapter 11 case which is not a secured Claim.

**10.     Fees to the United States Trustee.**     Quarterly fees pursuant to 28 U.S.C. § 1930(a)(6) continue to be payable to the Office of the U.S. Trustee post-confirmation, until such time as the case is converted dismissed, or closed pursuant to a final decree.

**Plan Proponent:     Comforcare for MDE, Inc.**
**Debtor-in-Possession**

Date: February 1, 2016

**EXHIBITS:**

EXHIBIT A:   Debtor's Balance Sheet, including Assets at Fair Market Value, and Liabilities

EXHIBIT B:   Financial forecast for the Debtor

EXHIBIT C:   Debtor's most recent financial statements issued before this case started

EXHIBIT D:   Income Statement for the Debtor since the start of this bankruptcy case

EXHIBIT E:   Executory Contracts and Unexpired Leases to be Assumed

EXHIBIT F:   Executory Contracts and Unexpired Leases to be Rejected

EXHIBIT G:   Statement of the amount of cash projected to be on hand as of the Effective Date, and the sources of that cash

EXHIBIT H:   Liquidation Analysis